United States District Court
Southern District of Texas

**ENTERED**
September 30, 2019
David J. Bradley, Clerk

ENTERED
09/25/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| NORTHSTAR OFFSHORE GROUP, LLC § | | CASE NO: 16-34028 |
| Debtor(s) § | | |
| § | | CHAPTER 11 |
| § | | |
| JAMES KATCHADURIAN § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | | ADVERSARY NO. 18-03079 |
| § | | |
| NGP ENERGY CAPITAL § | | |
| MANAGEMENT, LLC, *et al* § | | |
| Defendant(s) § | | |

**REPORT AND RECOMMENDATION ON MOTION FOR
WITHDRAWAL OF THE REFERENCE**

The Court issues this Report and Recommendation to resolve NGP Energy Capital Management, L.L.C., *et al*'s[1] motion to withdraw the reference of this adversary proceeding. The Litigation Trustee opposes the motion. For the reasons set forth below, the Court recommends that the district court withdraw the reference of this adversary proceeding, but only upon this Court's certification that all pre-trial and dipositive matters have been concluded and are ready for trial.

**Background[2]**

Northstar is an oil and gas company headquartered in Houston, Texas, focused on offshore oil and gas exploration. (Case No. 16-34028, ECF No. 106 at 6–7). In 2012, Northstar shifted the focus of its business from actively producing oil and gas wells to the discovery of

---

[1] The defendants in this case include: NGP Energy Capital Management, LLC, NGP X US Holdings LP, NGP Natural Resources X, LP, NGP X Parallel Holdings, LP., NGP Natural Resources X Parallel Fund, LP, NOG Royalty Holdings, LP., Christopher Ray, Jesse Bomer, Tomas Ackerman, David Albin, and David Hayes. (*See* ECF No. 33).

[2] A substantial portion of this background section was written in reliance on the parties' briefing. It is included solely for background. This background section does not constitute findings by the Court.

new oil fields and began leveraging debt to finance its exploration and test drilling. (Case No. 16-34028, ECF No. 106 at 25).

By the second half of 2014, oil prices began to drop, which also coincided with a criminal fraud investigation into the Platinum Partner entities that formed Northstar's parent organization. (Case No. 16-34028; ECF No. 106 at 25). These events caused Northstar to experience a liquidity crisis and made it difficult to continue operating in the Gulf of Mexico. (Case No. 16-34028; ECF No. 106 at 25).

Northstar's financial situation came to head on August 12, 2016, when three creditors filed an involuntarily bankruptcy petition for Northstar pursuant to 11 U.S.C. § 303. (Case No. 16-34028; ECF No. 106 at 25). At Northstar's request, the Court granted relief and converted Northstar's case to a voluntary case under chapter 11 on December 2, 2016. (Case No. 17-03448; ECF No. 15 at 7). The Court confirmed Northstar's Second Amended Plan of Liquidation on December 22, 2017. (*See* Case No. 16-34028; ECF No. 1078). The terms of the Second Amended Plan created the Northstar Litigation Trust (the "Trust"), which received all of Northstar's causes of action on the effective date of the Plan. (Case No. 16-34028; ECF No. 969 at 17–18). The terms of the Plan also established James Katchadurian as the administrator of the Trust. (Case No. 16-34028; ECF No. 969 at 11).

*Relationship between NGP and Northstar*

NGP is a multi-billion-dollar hedge fund that invests in the energy industry through affiliates. (ECF No. 39 at 10). In the past, NGP has partnered with Northstar executives on oil and gas investments, selling two prior Northstar companies for a combined $480 million.[3] (ECF

---

[3] In 2006, NGP formed Northstar GOM, LLC. The first Northstar-related company combined oilfield interests from a company called, "Northstar Interests" with an NGP investment from its affiliate, Natural Gas Partners VIII. (ECF No. 1 at 7). In 2008, NGP sold Northstar GOM to Dynamic Offshore for $265 million. (ECF No. 1 at 7). Subsequently, NGP created Northstar Offshore Energy Partners with the same Northstar officers and another

No. 1 at 2). Northstar was the third investment undertaken by NGP with the "Northstar executive team." (ECF No. 1 at 2).

Northstar's Board was formed in February 2012. (ECF No. 39 at 10). The Board was composed of nine directors: Christopher Ray, Jesse Bomer, Tomas Ackerman, David Albin, David Hayes, S. Glynn Roberts, Gaylon Freeman, Mark Stevens, and James P. Ulm. (ECF No. 39 at 10). The Litigation Trustee refers to the first five of these directors—Ray, Bomer, Ackerman, Albin and Hayes—as "NGP Directors" and the last four—Roberts, Freeman, Stevens and Ulm—as "Northstar Directors" or officers. (ECF No. 1 at 8).

In mid-2012, Northstar purchased assets, including oil and gas leases and wells in an area of the Gulf known as the Creole Field (the "Creole Filed Assets") from Propel Energy, LLC. (ECF No. 1 at 8). Northstar initially proposed an $80 million-dollar bid for the Creole Field Assets; however, Northstar later increased that bid and paid Propel $113 million. (ECF No. 1 at 2, 8). Northstar alleges that NGP, using its control of Northstar through the NGP Directors, caused the bid increase, which resulted in an overpayment on the part of Northstar for the Creole Field Assets. (ECF No. 1 at 8).

In November 2013, Northstar obtained a $120 million-dollar short-term loan from Wells Fargo. (ECF No. 39 at 10). As part of the loan, Wells Fargo required that NGP commit to funding $75 million in additional capital to Northstar upon Northstar's request. (ECF No. 39 at 10). On the same day the loan was executed, NGP entities—NGP X, NGP Parallel, and NGP X US—entered into a contract with Northstar solidifying NGP's commitment to provide Northstar with $75 million at Northstar's request. (ECF No. 39 at 10). Along with the NGP entities, the Northstar Directors also provided individual capital contributions to Northstar. (ECF No. 56 at

---

affiliate, Natural Gas Partners IX. (ECF No. 1 at 8). In 2011, NGP sold Northstar Offshore Energy Partners to Ankor Energy for $215 million. (ECF No. 1 at 8).

126). For reasons for which the parties disagree, Northstar did not call upon NGP's commitment in full, and later released the Northstar Directors from their individual capital commitments.

On July 16, 2014, NGP-NOG and the minority shareholders of Northstar signed a Purchase and Sale Agreement with Lafitte Energy Corp., a subsidiary of Platinum Partners. (ECF No. 1 at 11). On August 1, 2014, NGP-NOG and NGP X US signed a contract with Northstar under which NPG-NOG agreed "to pay off the [Northstar] Bank Debt and eliminate the Working Capital Deficit" at the closing of the Lafitte Sale in exchange for: (i) a "significant net profits interest in [Northstar's] most promising fields" and (ii) the release of both NGP-NOG's $75 million capital contribution and the Northstar Directors' individual capital contributions. (ECF Nos. 1 at 11–12; 39 at 12).

On September 22, 2014, the date of the closing of the Lafitte Sale, Platinum Partners made an $80 million-dollar payment directly to Wells Fargo, while NGP funded $40 million of its $75 million capital contribution commitment. (ECF Nos. 1 at 11; 56 at 63). NGP and Northstar disagree on the extent of NGP's obligation as to the working capital deficit. Northstar argues that NGP failed to comply with its commitment to pay off the bank debt and eliminate its "Working Capital Deficit," while NGP claims that it provided Northstar with an amount "sufficient to pay [Northstar's] existing liabilities at the time" of the Lafitte Sale in compliance with their agreement. (ECF Nos. 1 at 11; 19 at 13).

On April 19, 2018, James Katchadurian, the Litigation Trustee filed this adversary proceeding against NGP Energy Capital Management, L.L.C. ("NGP Capital"), NGP X US Holdings, L.P. ("NGP X US"), NGP Natural Resources X, L.P. ("NGP X), NGP X Parallel Holdings, L.P. ("NGP Parallel"), NGP Natural Resources X Parallel Fund, L.P. ("NGP Parallel Fund"), NOG Royalty Holdings, L.P. ("NGP-NOG"), Christopher Ray, Jesse Bomer, Tomas

Ackerman, David Albin, David Hayes, S. Glynn Roberts, Gaylon Freeman, Mark Stevens, and James P. Ulm. (*See* ECF No. 1).[4]

The Trustee's Complaint asserted six claims against the Defendants:[5]

- (i) Count I.  A fraudulent transfer claim against Defendants pursuant to 11 U.S.C. § 544(b) and TUFTA based on Northstar's overpayment to Propel Energy for the Creole Field Assets, and the improper release of capital contributions on behalf of Northstar. (ECF No. 1 at 13–14).

- (ii) Count II.  A fraudulent transfer claim against Defendants pursuant to 11 U.S.C. § 548(a)(1) for agreeing to release "Defendants" from their contractual obligations to provide more than $75 million in capital to Northstar. (ECF No. 1 at 15–16).

- (iii) Count III.  A breach of fiduciary claim against the NGP Directors, the Northstar Directors, and NGP-NOG for breaching their duties of loyalty and care in causing Northstar to overpay for the Creole Field Assets, refusing to exercise Northstar's contractual right to call on capital; and allowing a release and waiver of the Defendants' capital commitments to Northstar without consideration. (ECF No. 1 at 16).

- (iv) Count IV.  A breach of contract claim against NGP-NOG for failing to eliminate Northstar's working capital deficit. (ECF No. 1 at 17).

- (v) Count V.  A conspiracy claim against the NGP entities for working with the Northstar Directors and the NGP Directors to commit the above fiduciary breaches and fraudulent transfers. (ECF No. 1 at 7).

- (vi) Count VI.  An aiding and abetting claim against the NGP entities, the Northstar Directors, and NGP-NOG for overpaying for the Creole Field Assets, releasing Northstar's capital obligations, breaching fiduciary duties, and engaging in fraudulent transfers. (ECF No. 1 at 17–18).

In essence, the Trustee claims that NGP conspired with the NPG Directors and the Northstar Directors to cause Northstar to: (i) overpay for the Creole Field Assets in mid-2012; and (ii) release NGP and "the individual directors" from their capital commitments to Northstar

---

[4] The Litigation Trustee divides the Defendants into three subgroups: (i) the NGP entities, (ii) the NGP-related Directors (Ackerman, Albin, Bomer, Hayes, and Ray); and (iii) the Northstar Directors (Roberts, Freeman, Stevens, and Ulm). (ECF No. 39 at 13, 26).

[5] "Defendants" refers to all three subgroups.

prior to the Lafitte Sale in 2014 without receiving reasonably equivalent value for the exchange. (ECF No. 1 at 1–2).

On June 4, 2018, NGP Energy Capital Management, L.L.C., *et al* ("NGP Energy")[6] filed a motion to dismiss the Trustee's complaint. (*See* ECF No. 19). NGP Energy argues that the Trustee's complaint fails to:

    (i)    Allege facts that establish NGP's purported "control" over Northstar;

    (ii)    Demonstrate how the payment to Propel Energy for the Creole Field Assets benefitted the Defendants, or that any of the Defendants are transferees of the purchase price;

    (iii)    Plead NGP Energy's actual intent with particularity as required by Rule 9(b);

    (iv)    Meet the requirements of Rule 8(a), because the complaint impermissibly "lumps" the Defendants together;

    (v)    Plead the existence of a "triggering" secured creditor in order to establish standing under 11 U.S.C. § 544(b);

    (vi)    Establish a claim against a Defendant other than NGP-NOG for the capital commitment release, because no other Defendant owed a capital commitment at the time of the release;

    (vii)    Establish a fraudulent transfer claim under TUFTA, because Wells Fargo Bank held a valid lien on NGP-NOG's capital commitment to Northstar;

    (viii)    Support the application of the "discovery rule," nor can the discovery rule apply to defer the accrual of a claim under Texas Business and Commerce Code § 24.006(b);

    (ix)    Establish Northstar's "insolvency," which is necessary for a constructive fraudulent transfer claim;

    (x)    Plead facts sufficient to demonstrate violations of the duties of loyalty and care;

    (xi)    Plead that NGP-NOG breached its obligation to Northstar at the closing of the Lafitte Sale; and

    (xii)    Set forth claims for conspiracy and aiding and abetting, for which there is no cause of action under Texas law.

---

[6] "NGP Energy" encompasses both the NGP entities and the NGP Directors.

(ECF No. 47 at 3–4). NGP Energy's motion to dismiss attached various exhibits to support its argument for dismissal of the Trustee's complaint. (*See* ECF No. 19). On June 4, 2018, the Northstar Directors also filed a motion to dismiss the Trustee's complaint. (*See* ECF No. 23). The Northstar Directors' argument largely tracks NGP Energy's argument.

Subsequently, on June 21, 2018, NGP Energy filed a jury demand in which it declined to consent to a jury trial in bankruptcy court, or the entry of a final order by this Court. (*See* ECF No. 32). Concurrently with its jury demand, NGP Energy filed a motion to withdraw the reference to the district court and a motion to stay discovery pending its motion to dismiss. (*See* ECF Nos. 30, 33). In its motion to withdraw the reference, NGP Energy argues that withdrawal of the reference is mandatory in light of its Seventh Amendment right to a jury trial. (ECF No. 33 at 8–16). Alternatively, NGP Energy claims that permissive withdrawal of the reference is appropriate pursuant to 11 U.S.C. § 157(d). (ECF No. 33 at 16). Specifically, NGP Energy argues that permissive withdrawal is appropriate here, where: (i) a substantial portion of the Trustee's claims are state law claims; (ii) the Defendants have not consented to a jury trial in bankruptcy court; (iii) no discovery has taken place; (iv) the Liquidating Plan has been confirmed; (v) withdrawal will not affect Northstar's resources; and (vi) no specialized knowledge through this Court is required to adjudicate the underlying claims. (ECF No. 33 at 18–19).

On July 13, 2018, the Trustee filed a motion to strike five of the six exhibits attached to NGP Energy's motion to dismiss. (*See* ECF No. 41). The Trustee argues that consideration of the documents is inappropriate at a Rule 12(b)(6) stage because the exhibits are "outside of the four corners of the complaint and not 'central' to its claims." (ECF No. 41 at 2). Concurrently with his motion to strike, the Trustee filed its opposition to NGP Energy's motion to withdraw

the reference. (*See* ECF No. 40). The Trustee argues that a jury demand does not warrant immediate withdrawal of the reference, suggesting instead that this Court maintain the reference through all pre-trial and dispositive motions. (ECF No. 40 at 3). The Trustee reasons that in light of this Court's familiarity with the case it is in the best position to resolve all pre-trial issues before withdrawing the reference. (ECF No. 40 at 4).

On August 3, 2018, NGP Energy filed a response to the Trustee's motion to strike, claiming that the attached exhibits could properly be considered by the Court because some were part of the pleadings and central to the Trustee's claim and others were public records of which the Court could take judicial notice. (*See* ECF No. 46). Concurrently with its response, NGP Energy filed a reply in support of its motion for summary judgment. (*See* ECF No. 47). The Northstar Directors also filed a response to the Trustee's motion to strike, which largely mirrored NGP Energy's motion. (*See* ECF No. 49).

The Court held a hearing on (i) the Defendants' motions to dismiss, (ii) the Trustee's motion to strike, (iii) NGP Energy's motion to stay discovery, and (iii) NGP Energy's motion to withdraw the reference on September 1, 2018. (*See* ECF No. 56). At the hearing, the Court orally granted NGP Energy's motion to stay discovery, "subject to reconsideration once" there is "a new complaint on file." (ECF No. 56 at 173). The Court found NGP Energy's jury demand appropriate, subject to potential changes in light of future pleadings. (ECF No. 56 at 173). The Court further stated that it would issue a report and recommendation to the district court, recommending that the district court deny withdrawal until the issues are ready for trial. (ECF No. 56 at 171–174). Neither party objected to the Court's preliminary ruling regarding NGP Energy's motion to withdraw the reference. (ECF No. 56 at 174).

## Analysis

I. **Mandatory Withdrawal of the Reference**

NGP Energy argues that withdrawal of the reference is mandatory in light of its Seventh Amendment right to a jury trial. (ECF No. 33 at 8). The Trustee does not dispute NPG Energy's right to a jury trial. (ECF No. 40 at 3-4). Rather, the Trustee argues that the Court should maintain the reference until all pre-trial issues have been resolved. (ECF No. 40 at 3).

Pursuant to 28 U.S.C § 157(d), a proceeding must be withdrawn from a bankruptcy court if the resolution of that proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). "[W]ithdrawal *must* be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that non-Code federal law has more than a de minimis effect on interstate commerce; and (3) that the motion to withdraw was timely." *In re Nat'l Gypsum*, 145 B.R. 539, 541 (N.D. Tex. 1992) (emphasis added).

Neither party disputes that NGP Energy's motion to withdraw the reference was timely. The Court's focus therefore shifts to whether "the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law." *In re Nat'l Gypsum*, 145 B.R. at 541. The Trustee has brought causes of action against the Defendants under 11 U.S.C. § 548(a)(1). (*See* ECF No. 1 at 13–16). Thus, there is no question that some of the claims at issue involve Title 11. However, the remaining claims involve state law. (*See* ECF No. 1 at 7, 16–18 (asserting claims for fraudulent transfers under state law, breach of contract, conspiracy, and aiding and abetting)). This proceeding therefore does not involve a substantial and material

question of non-Bankruptcy federal law. Accordingly, withdrawal of the reference is not mandatory pursuant to § 157(d).

## II. Permissive Withdrawal of the Reference

Even if withdrawal of the reference is not mandatory, 28 U.S.C. § 157(d) provides that the "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In determining whether cause exists for reference in this case to be withdrawn, courts weigh six factors: (i) the goals of promoting uniformity in the bankruptcy administration; (ii) reducing forum shopping and confusion; (iii) conservation of the debtors' and creditors' resources; (iv) expediting the bankruptcy process; (v) the right of the party to a jury trial; and (vi) whether the proceeding is core or non-core. *In re Quality Lease & Rental Holdings, LLC*, No. 14-60074, 2016 WL 416961, at * 4 (Bankr. S.D. Tex. Feb. 1, 2016) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *see In re Burger Boys, Inc.*, 94 f.3d 755, 762 (2d Cir. 1996). "The majority of courts evaluating a request to withdraw the reference place paramount importance on whether the claims at issue are core or non-core." *In re Quality Lease*, 2016 WL 416961, at *5. Core proceedings are those that are "uniquely affected by the bankruptcy proceedings" or that directly affect a core bankruptcy function." *Id*. Non-core claims include claims that are related to a bankruptcy case but do not arise in or arise under the Bankruptcy Code. *Id*.

   i. *Core v. Non-Core Claims*

The Trustee has brought causes of action against the Defendants under §§ 548 and 550 to avoid and recover alleged fraudulent transfers. (ECF No. 1 at 13–15). Proceedings to avoid or recover allegedly fraudulent conveyances are statutorily defined as core proceedings. 28 U.S.C.

Case 4:19-cv-03740 Document 1 Filed on 09/25/19 in TXSD Page 11 of 17

§ 157(b)(2)(H); *see Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016) ("There is no question that claims based on [§§ 548 and 550] are statutorily defined as core proceedings"). In addition to these claims brought under the Bankruptcy Code, the Trustee has also brought a cause of action to recover allegedly fraudulent transfers under Texas state law. (*See* ECF No. 1 at 13). Invoking § 544 of the Code, the Trustee asserts state law claims for fraudulent transfers under Texas Business and Commerce Code §§ 24.005 and 24.006. (ECF No. 1 at 13). Unlike the claims brought under §§ 548 and 550 of the Bankruptcy Code, "a fraudulent transfer claim under state law . . . is nevertheless a 'related' to proceeding, not a core proceeding." *In re Brown Med. Ctr., Inc.,* 578 B.R. at 597. Furthermore, the Trustee has asserted state law claims, such as breach of contract, conspiracy, and aiding and abetting. (ECF No. 1 at 16–18). Claims based upon state law for prepetition breaches of contract, breaches of fiduciary duty, and conspiracy to defraud are non-core proceedings. *Tow v. Speer (In re Royce Homes, L.P.)*, No. 11–03191, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 12, 2011). Thus, this adversary proceeding involves both core and non-core claims.

Absent consent, a bankruptcy court does not have authority to enter a final judgment on non-core claims. *In re Quality Lease*, 2016 WL 416961, at *6. Rather, a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court. Thus, where an adversary proceeding encompasses both core and non-core claims, courts have held that withdrawal of the reference may nevertheless be appropriate because it promotes judicial efficiency. *Byman v. Brown Lab Inv., LLC (In re Align Strategic Partners),* No. 18-03324, 2019 WL 2524938, at *2 (Bankr. S.D. Tex. Mar. 5, 2019) (first citing *In re Brown Med. Ctr, Inc.*, 578 B.R. at 597; then citing *In re Mirant Corp.*, 354 B.R. 113, 122 (Bankr. N.D. Tex. 2006), *aff'd*, 308 Fed. Appx. 824 (5th Cir. 2009)). Adjudicating all of the claims, both core and non-core, in

11 / 17

the district court eliminates the prospect of an appeal from the bankruptcy court's adjudications of core claims and dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy court after a trial in the bankruptcy court as to non-core claims. *In re Align Strategic Partners*, 2019 WL 2524938, at *2. "The creation of two sets of proceedings could create judicial inefficiency, which should be avoided. *Id*. This weighs in favor of withdrawal in *whole*." *Id*. (citing *Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, LLC.*), 455 B.R. 869, 879 (E.D. La. 2011)). However, although "the core versus non-core factor is an important factor within the permissive withdrawal analysis" it is not alone determinative. *Lopez v. Portfolio Recovery Assoc. (In re Lopez)*, No. 13-7019, 2017 WL 3382099, at *8 (Bankr. S.D. Tex. Mar. 20, 2017) (citing *Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 392 (Bankr. S.D. Tex. 2009)). "Where core issues predominate and the objectives of the Bankruptcy Code will potentially be impaired, a district court should generally deny a motion to withdraw the reference and permit the bankruptcy court to retain jurisdiction." *In re Lopez*, 2017 WL 3382099, at *9 (citing *Rodriguez v. Countrywide Home Loans, Inc.* 421 B.R. 341, 352 (S.D. Tex. 2009)). Here, however, state law claims predominate. Aside from the Trustee's causes of action under §§548 and 550 to avoid and recover alleged fraudulent transfers, all other claims against the Defendants are state law claims. (ECF No. 1 at 13, 16–18 (asserting claims for fraudulent transfers under Texas Business and Commerce Code §§ 24.005 and 24.006, breach of contract, conspiracy, and aiding and abetting)).

      Accordingly, this factor weighs in favor of withdrawal of the reference.

    *ii. Uniformity in the Bankruptcy Administration*

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *MPF Holding U.S. LLC v. Denton (In re MPF Holding)*, No. 08-36084-H4-11, 2013 WL 12146958, at *2 (Bankr. S.D. Tex. Apr. 26, 2013) (citations omitted). Furthermore, if the Bankruptcy Court maintains an "intimate familiarity" with the case and has dedicated a large amount of time and resources to the adversary proceeding, this factor "weighs heavily in favor of denying" the withdrawal of the reference. *In re Lopez*, 2017 WL 3382099, at *8. Conversely, this factor favors withdrawal when a motion to withdraw the reference is filed shortly after a complaint and the court has not reached a significant level of familiarity with the case. *Id.* (citing *In re EbaseOne Corp.*, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006)).

    The bankruptcy court in *Lopez* held it had "significant familiarity with the adversary proceeding" in light of its three memorandum opinions and "various related hearings." 2017 WL 3382099, at *8. The court noted that "[w]here the bankruptcy court is intimately familiar with the types of claims filed as well as the specifics of the claim, the potential expediency of the bankruptcy court resolution of the issues favors denial of the motion to withdraw the reference." *Id.* (citing *Rodriguez*, 421 B.R. at 352). Conversely, in *MPF Holding*, the bankruptcy court concluded that this factor weighed in favor of withdrawing the reference because it had held few hearings in the adversary proceeding, none of which were evidentiary hearings or "concerned issues relating to the underlying facts of the suit." 2013 WL 12146958, at *2.

    Here, the Court has ruled on several motions and held multiple hearings in this case. (*See* June 19, 2018 Hearing; *see also* August 27, 2018 Hearing). Most notably, the Court has held an evidentiary hearing on the Defendants' motions to dismiss. (*See* August 27, 2018 Hearing).

Although not as extensive as that found in *Lopez*, this Court has gained familiarity with the claims at issue in this adversary proceeding. Allowing withdrawal of the reference would duplicate efforts given that the parties have already presented their arguments to the Court.

Furthermore, as noted above, the undersigned Judge began handling the Northstar bankruptcy case in 2016. (Case No. 16-34028). Since its bankruptcy filing, this Court has confirmed Northstar's Second Amended Plan of Liquidation and issued various opinions both in the main case and in an adversary proceeding stemming from the main case. (*See* Case No. 16-34028; ECF No. 1078); *see also In re Northstar Offshore Grp., LLC*, No. 16-34028, 2018 WL 4443201 (Bankr. S.D. Tex. Sept. 14, 2018); *Northstar v. A&B Valve & Piping Sys., LLC (In re Northstar Offshore Grp., LLC)*, No. 17-03406, 2018 WL 5880949 (Bankr. S.D. Tex. Nov. 5, 2018). Thus, the undersigned Judge is "intimately familiar with the underlying facts, the parties, and the remaining issues." *Lopez*, 2017 WL 3382099, at *9.

Accordingly, this factor weighs against abstention.

### iii. Forum Shopping and Confusion

"[A] party cannot use the jury right as a tool for forum shopping." *Levine v. M&A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 206 (S.D. Tex. 2008). A major consideration is whether "there is an appearance of forum shopping" by the requesting party. *Id*. "It is the Defendant that bears the burden to demonstrate that this factor weighs in favor of withdrawal of the refence." *In re Morrison*, 409 B.R. at 394.

NGP Energy claims that "withdrawal of the reference will not encourage forum shopping because the [s]tate [l]aw [c]laims do not arise in or under the Bankruptcy Code and all of the [c]laims must ultimately be considered by the District Court in any event." (ECF No. 33 at 19). As noted above, the Trustee has not objected to the Defendants' right to a jury trial; rather the

Trustee argues that the reference should be withdrawn after all pre-trial matters have been resolved in the bankruptcy court. (ECF No. 40 at 3–4). Furthermore, the Trustee has not raised allegations of forum shopping, nor does the Court see any based upon the record before it. Accordingly, this factor is neutral.

    iv. *Conservation of Debtor's and Creditors' Resources*

"Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation." *In re MPF Holding*, 2013 WL 12146958, at *3. Thus, "the bankruptcy court is typically in the best position to efficiently dispose of cases because of its specialty, experience, and familiarity with the underlying facts." *In re Lopez*, 2017 WL 3382099, at *11 (citing *Cirillo v. Valley Baptist Health System (In re Cirillo)*, No. 13-01002, 2014 WL 1347362, at *9 (Bankr. S.D. Tex. Apr. 3, 2014)). Courts have found, particularly due to the existence of a jury demand, that "immediate withdrawal of the reference will serve the interests of judicial economy" because it would allow the district court to familiarize itself with the case. *Id*. (citing *In re MPF Holding*, 2013 WL 12146958, at *3). Conversely, although the report and recommendation procedure implemented by Congress may not be the most convenient for a party, courts have held that this factor weighs against withdrawal because "the district courts would be inundated with adversary proceedings that raise both core and non-core claims" if cases were withdrawn solely based on the report and recommendation scheme. *Id*.

NPG Energy argues that "this Court does not have particular knowledge that would enable it to determine the dispute more efficiently than the District Court" nor does "this Court…have any specialized knowledge regarding the underlying claims that would promote judicial economy since discovery has not yet taken place in the case." (ECF No. 33 at 18–19). NGP Energy further notes that "this Court cannot enter a final judgment as to the [c]laims;

therefore, it would be more efficient for the dispute to be heard once in the District Court . . . ." (ECF No. 33 at 19).

Concerns relating to potential *de novo* review by the district court do not justify withdrawal in every instance. *In re Lopez*, 2017 WL 3382099, at *11 (citing *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 768 (S.D. Tex. 2007)). In deciding whether this factor weighed in favor of withdrawal of the reference, the court in *Lopez* focused on its "intimate familiarity with the facts and issues involved" in the adversary proceeding. 2017 WL 3382099, at *8, 11 (noting the various hearings held and the three memorandum opinions issued).

As noted earlier, although this Court's familiarity with the adversary proceeding at issue is less extensive than that found in *Lopez*, the Court has gained familiarity with the case, demonstrated by its ruling on several motions and the various hearings held, one of which was an evidentiary hearing on the Defendants' motion to dismiss. Resources will be most efficiently utilized by allowing this Court to handle all pre-trial matters. Accordingly, this factor weighs against withdrawing the reference.

v. *Expediting the Bankruptcy Process*

NGP Energy argues that "[t]he speed of the bankruptcy process and uniformity of bankruptcy administration weigh in favor of withdrawal because this proceeding will not affect the resolution of the main Bankruptcy Case, as the Liquidating Plan has already been confirmed." (ECF No. 33 at 19). "For that same reason, withdrawal will not affect the Debtor's resources, and the resources of the Movants would not be negatively affected by withdrawal." (ECF No. 33 at 19). The Court agrees. In light of Northstar's confirmed Plan, "the outcome of this litigation will not bear heavily on the administration of the estate." *In re Quality Lease*, 2016 WL 416961, at *6. However, because "withdrawal of the reference will not expedite the

[bankruptcy] process, nor will it hinder the bankruptcy," the Court recommends that withdrawal of the reference be denied in favor of leaving the case with a court who is familiar with the underlying issues. *In re Lopez*, 2017 WL 3382099, at *12. Accordingly, this factor weighs against abstention.

vi. *Right to Jury Trial*

NPG Energy has asserted its Seventh Amendment right to a jury trial. (ECF No. 32). "A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh Amendment to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding." *In re Nu Van Tech., Inc.*, No. 01–49589, 2003 WL 23785355, at *2 (N.D. Tex. Oct. 14, 2003). The existence of a jury demand weighs in favor of withdrawal of the reference. *In re Lopez*, 2017 WL 3382099, at *12 (first citing *Veldekens*, 362 B.R. at 769; then citing *In re MPF Holding*, 2013 WL 12146958, at * 3).

The Trustee does not dispute the Defendants' right to a trial; rather the Trustee maintains that the reference be withdrawn only after this Court has resolved all pre-trial matters. (ECF No. 40 at 4). Accordingly, this factor is neutral.

## Conclusion

For the reasons set forth above, the Court recommends that the district court order the withdrawal of the reference, but only after this Court certifies that all pre-trial and dispositive matters have been resolved and that this adversary proceeding is ready for trial.

SIGNED **September 25, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE